# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CONNIE SUE GUTHRIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Consolidated Case |
| v. | ) | No. 4:07CV2108 CEJ |
| | ) | |
| FRANKLIN COUNTY, | ) | |
| MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| CONNIE SUE GUTHRIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Associated Case |
| v. | ) | No. 4:07CV2109 ERW |
| | ) | |
| STATE OF MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motions to dismiss pursuant to Rule 12(b)(6).

### Background

Plaintiffs are proceeding pro se and in forma pauperis. The Court previously reviewed the complaint pursuant to 28 U.S.C. § 1915(e) and dismissed several

defendants and claims on the grounds of frivolity or failure to state a claim. Only the remaining claims will be addressed here.

Plaintiffs are the former proprietors of a dog rescue shelter called Save Our Strays, Inc., which they ran from their home in Franklin County, Missouri. Defendants Jerry Eber, Judi Riodan-Lolli, Elizabeth Wainwright, Jim Gauthier, Jamilon Niemann, and Tiffany Landrum were employed by the Missouri Department of Agriculture at the time of the incidents in the complaint. Defendants Tim Rickey and Donald Bridges were employed by the Humane Society at the time of the incidents in the complaint. Defendant Charles Subke is a deputy sheriff for Franklin County, Missouri.

Plaintiffs ran Save Our Strays from 1997 through 2006. Save Our Strays was licensed by the Department of Agriculture. During Fall 2005 and Spring 2006 plaintiffs had disagreements with several different veterinarians about their billing practices. As a result of these disagreements, plaintiffs filed formal complaints against some of their veterinarians with the Department of Agriculture and the Missouri Attorney General.

Eber, acting as the Animal Care Facilities Act Program Director for the Department of Agriculture, oversaw the investigation of the plaintiffs' complaints. During the investigation, Eber talked to some of plaintiff's former veterinarians; these veterinarians allegedly made disparaging remarks about the state of plaintiffs' rescue operations.

On June 8, 2006, Eber conducted an inspection of plaintiffs' home and Save Our Strays's operations. Three other inspectors, including defendant Wainwright, attended the inspection. Plaintiffs felt threatened by Eber's demeanor and remarks during the inspection. Plaintiff Connie Guthrie told Eber during the inspection that she was going to close down the rescue operation.

After the inspection was over, plaintiffs called the Director of the Department of Agriculture to complain about Eber's behavior. On June 11, 2006, plaintiffs turned in their license to the Department of Agriculture, signaling that they were no longer running a stray rescue operation. Plaintiffs believed that because they turned in their license, their property was no longer subject to search or inspection by the Department of Agriculture.

After the June 8 inspection, Eber and Wainwright filed affidavits with defendant Subke, stating that several of plaintiffs' dogs were sick and had not been seen by a veterinarian. Plaintiffs allege that Eber and Wainright deliberately lied in these affidavits in an attempt to deprive plaintiffs of their rights.

The affidavits were notarized by the prosecutor for Franklin County. They were then taken to a Franklin County judge, who signed a search warrant for plaintiffs' property. Plaintiffs allege that the search warrant was signed by a probate judge.

-3-

On August 17, 2006, defendants Subke, Eber, Wainwright, Riodan-Lolli, Gauthier, Niemann, Landrum, Rickey, and several other unnamed persons executed the search warrant on plaintiffs' property. Defendants took all of the animals from plaintiffs' property pursuant to the warrant. Plaintiffs claim that all of the animals present were pets and not rescue animals. Landrum euthanized two kittens. Plaintiffs allege that all of the animals were healthy and that defendants took them for an improper purpose.

Soon after the search, a disposition hearing was held. Defendant Bridges testified at the hearing that one of the dogs, identified as #37, had scars all over its body. Plaintiffs alleges that Bridges committed perjury at the hearing as part of a conspiracy to deprive plaintiffs of their rights.

**Standard**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to plaintiff. Gregory v. Dillard's, 494 F.3d 694, 709 (8th Cir. 2007). The Federal Rules do not require great precision in pleadings. Id. at 710. "The simplified notice pleading standard under Fed. R. Civ. P. 8(a) requires only a statement that gives the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." Id. (quotations omitted). However, the

factual allegations in the complaint must be more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); see Gregory, 494 F.3d at 710. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

**Discussion**

1. <u>Motion of Defendants Eber, Riodan-Lolli, and Wainright to Dismiss or, Alternatively, for a More Definite Statement</u>

Defendants Eber, Riodan-Lolli, and Wainright have moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. These defendants have moved, alternatively, for a more definite statement under Rule 12(e). The motion will be granted in part and denied in part.

*A.    Plaintiff's' Official Capacity Claims Under § 1983*

The official capacity claims against Eber, Riodan-Lolli, and Wainright, who are employed by Missouri's Department of Agriculture, are equivalent to claims against the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint fails to state a claim upon which relief can be

granted as to defendants Eber, Riodan-Lolli, and Wainright in their official capacities, and the Court will dismiss the complaint as to these defendants in this respect.

### B. Plaintiffs' Fourth Amendment Claims

Defendants argue that plaintiffs' Fourth Amendment claims under § 1983 should be dismissed for failure to state a constitutional violation. Defendants contend that the search of plaintiffs' property and seizure of plaintiffs' animals was done pursuant to a valid warrant and that their reliance on that warrant was reasonable. Plaintiffs, however, alleged in their complaint that the warrant was invalid because the judge who issued the warrant was not authorized to do so under the Missouri Constitution and because the warrant specified that those executing the warrant were authorized to search for unhealthy horses, not for dogs.

The warrant provision of the Fourth Amendment requires (1) that the warrant be issued by a neutral, disinterested magistrate; (2) that those seeking the warrant demonstrate to the magistrate probable cause to believe that the evidence sought will aid in a particular apprehension for a particular offense; and (3) that the warrant particularly describe the things to be seized, as well as the place to be searched. Dalia v. United States, 441 U.S. 238, 255 (1979). Viewing the allegations of the complaint in the light most favorable to plaintiffs, the Court finds that plaintiffs have sufficiently alleged a prima facie case for unconstitutional search and seizure against defendants

Eber, Riodan-Lolli, and Wainright. As a result, their motion to dismiss will be denied insofar as it requests dismissal of plaintiffs' Fourth Amendment claims against them in their individual capacities.

### C. Plaintiffs' Claims for Civil Conspiracy Under § 1983

Defendants argue that plaintiffs' claims against them for civil conspiracy in violation of § 1983 should be dismissed because plaintiffs have failed to adequately allege any constitutional violation and because plaintiffs failed to allege that a "meeting of the minds" occurred between any of the parties to violate plaintiffs' constitutional rights.

As discussed above, the Court finds that plaintiffs have adequately alleged a violation of the Fourth Amendment under the notice pleading rules. Consequently, defendants' first argument fails.

To properly plead a claim for civil conspiracy under § 1983, a plaintiff must include factual allegations showing a "meeting of the minds" concerning unconstitutional conduct; although an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy before such a claim can withstand a motion to dismiss. See Mershon v. Beasely, 994 F.2d 449, 451 (8th Cir. 1993).

Construed liberally, and viewed in the light most favorable to plaintiffs, the complaint appears to allege that Eber and Wainright falsified affidavits and inspection records in order to secure the search warrant for plaintiffs' property. Although plaintiffs do not use the term "meeting of the minds," they do appear to be making allegations of conspiracy as to these defendants sufficient to defeat a motion to dismiss. Defendants' motion to dismiss will therefore be denied in this respect.

### D. *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity because plaintiffs have failed to adequately allege any constitutional violation and because even if plaintiffs had alleged a violation of a constitutional right such right was not clearly established at the time of the alleged incidents.

As stated above, the Court finds that plaintiffs have adequately alleged a violation of the Fourth Amendment under the notice pleading rules. Additionally, the Fourth Amendment jurisprudence giving rise to plaintiffs' claim was well established at the time of the alleged incidents. See Dalia, 441 U.S. at 255. As a result, defendants Eber, Riodan-Lolli, and Wainright have failed to show that they are entitled to qualified immunity at this stage of this case. The facts of this case are simply not sufficiently developed to make such a finding. Defendants' motion to dismiss will therefore be denied in this respect.

### E. *Plaintiffs' State Law Claims*

Defendants argue that plaintiffs' state law claims should be dismissed because defendants are entitled to official immunity or because defendants are entitled to protection from suit under the public duty doctrine.

"Under Missouri law, the doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties." Hawkins v. Holloway, 316 F.3d 777, 788 -789 (8th Cir. 2003) (quotation omitted). "Generally speaking, discretionary acts are those acts involving the official's exercise of reason in developing a means to an end, and the employment of judgment to determine how or whether an act should be performed or a course pursued. [H]owever, official immunity does not apply where the official's discretionary act was undertaken in bad faith or with malice." Id. at 789 (citation and quotation omitted).

In this case, the Court has found that plaintiffs have adequately alleged a violation of their Fourth Amendment right to be free from unreasonable searches and seizures against these defendants. As a result, these defendants are not entitled to official immunity at this stage of these proceedings. Defendants' motion to dismiss will therefore be denied in this respect.

"The public duty doctrine holds that a public official, or a public employee, may not be held liable to a person injured by his negligence in the performance of his public duty, because his duty is owed only to the general public, and not to the person injured. In the case of a public official, rarely if ever will the public duty doctrine provide a shield from liability where the official immunity doctrine would not. The two doctrines merge; they produce the same result. " Brown v. Tate, 888 S.W.2d 413, 416 (Mo. Ct. App. 1994).

Because the public duty doctrine mandates the same result as official immunity, defendants' motion to dismiss will be denied in this respect as well.

### F. *Defendants' Motion for a More Definite Statement*

Defendants argue, in the alternative, that the Court should order plaintiffs to amend their complaint to make it more definite and certain under Rule 12(e). Defendants contend that absent such an order they will be prejudiced in attempting to formulate an answer because the complaint is unduly lengthy and conclusory. They further assert that they will be prejudiced during discovery because the claims in this case are not well defined.

The Court finds defendants' arguments in this regard to be unpersuasive. The defendants have shown that they can understand the complaint and respond to its allegations because they filed a lengthy and complex motion to dismiss. Additionally,

the Federal Rules of Civil Procedure provide the parties several options for limiting discovery abuses in this case. As a result, the motion for a more definite statement will be denied.

2.   Motion of Defendant Subke to Dismiss

Defendant Subke has moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

   A.   *Plaintiff's' Official Capacity Claims Under § 1983 Fail to State a Claim Upon Which Relief Can be Granted*

Subke argues that the complaint should be dismissed against him insofar as it attempts to bring claims against him in his official capacity.

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case Franklin County. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Franklin County was responsible for the alleged violations of plaintiff's

constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted against Subke in his official capacity.

### B. *Plaintiffs' Fourth Amendment Claims*

Subke argues that plaintiffs' Fourth Amendment claims under § 1983 should be dismissed for failure to state a claim upon which relief can be granted.

The complaint alleges that the search warrant only authorized defendants to search for unhealthy horses, not for dogs or cats. Viewed in the light most favorable to plaintiffs, the complaint states a prima facie case for violation of plaintiffs' Fourth Amendment rights. Subke's motion to dismiss will therefore be denied in this respect.

### C. *Plaintiffs' Statutory State Law Claims*

Subke argues that plaintiffs' state law claims arising under Mo. Rev. Stat. §§ 542.261, 542.276, and 578.018 should be dismissed for failure to state a claim upon which relief can be granted.

Mo. Rev. Stat. § 542.261 states, "the term "peace officer" means a police officer, member of the highway patrol or water patrol to the extent otherwise permitted by law to conduct searches, sheriff or deputy sheriff." There are no allegations in the complaint that might show that Subke violated this statute. As a result, the motion to dismiss plaintiffs' claims arising under this section will be granted.

Mo. Rev. Stat. § 542.276 outlines the procedures by which a police officer in Missouri may make an application for the issuance of a search warrant. There are no allegations in the complaint that might show that Subke violated this statute. As a result, the motion to dismiss plaintiffs' claims arising under this section will be granted.

Mo. Rev. Stat. § 578.018 states, in relevant part:

> Any duly authorized public health official or law enforcement official may seek a warrant from the appropriate court to enable him to enter private property in order to inspect, care for, or impound neglected or abused animals. All requests for such warrants shall be accompanied by an affidavit stating the probable cause to believe a violation of sections 578.005 to 578.023 has occurred. A person acting under the authority of a warrant shall:
>
> > (1) Be given a disposition hearing before the court through which the warrant was issued, within thirty days of the filing of the request for the purpose of granting immediate disposition of the animals impounded;
> >
> > (2) Place impounded animals in the care or custody of a veterinarian, the appropriate animal control authority, or an animal shelter. If no appropriate veterinarian, animal control authority, or animal shelter is available, the animal shall not be impounded unless it is diseased or disabled beyond recovery for any useful purpose;
> >
> > (3) Humanely kill any animal impounded if it is determined by a licensed veterinarian that the animal is diseased or disabled beyond recovery for any useful purpose;
> >
> > (4) Not be liable for any necessary damage to property while acting under such warrant.

In their complaint, plaintiffs allege that the warrant was defective because the Department of Agriculture defendants lied when they made their affidavits and because the search exceeded the scope of the warrant. As a result, Subke's motion to dismiss plaintiffs' claims arising under § 578.018 will be denied.

Subke further argues that he should be shielded by the official immunity doctrine regarding his involvement with the search of plaintiffs' property. Like the motion of the Department of Agriculture defendants, this argument fails for the same reason as his argument pertaining to plaintiffs' Fourth Amendment claims under § 1983.

    D. *Plaintiffs' Claim Arising Under Mo. Const. Art. I, Sec. 15*

Subke argues that plaintiffs' claim arising under Article I, Section 15 of the Missouri Constitution should be dismissed because this Section does not provide plaintiffs with a private cause of action.

The Missouri legislature has not enacted any law similar to 42 U.S.C. § 1983 that gives citizens a private cause of action to sue state actors for violations of the Missouri Constitution. E.g., Moody v. Hicks, 956 S.W.2d 398, 402 (Mo. Ct. App. 1997). As a result, plaintiffs have no cause of action to sue for any violation of Article I, Section 15 of the Missouri Constitution, and plaintiffs' claims arising under this Section will be dismissed for failure to state a claim upon which relief can be granted.

  3. <u>Motion of Defendants Rickey and Bridges to Dismiss</u>

Defendants Rickey and Bridges have filed motions to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. *Plaintiffs' Claims Under § 1983*

Defendants Rickey and Bridges were both employed by the Humane Society at the time of the incidents giving rise to the complaint. There is no dispute that Rickey and Bridges were not state actors during the relevant time period.

"It is well settled that a private party may be held liable on a § 1983 claim if 'he is a willful participant in joint action with the State or its agents.'" Mershon v. Beasely, 994 F.2d 449, 451 (8th Cir. 1993) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)); see Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 422 (8th Cir. 2007). "In construing that test in terms of the allegations necessary to survive a motion to dismiss, [the United States Court of Appeals for the Eighth Circuit] has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon, 994 F.2d at 451. The facts alleged with respect to a conspiracy must be specific and may not be merely conclusory. White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981).

While the complaint contains several conclusory allegations to the effect that defendants were involved in a conspiracy, there are no specific factual allegations that Rickey or Bridges came to a mutual understanding, or a meeting of the minds, with any of the state actors to violate plaintiffs' civil rights. As a result, plaintiffs' § 1983 claims against Rickey and Bridges will be dismissed.

### B. *Plaintiffs' Statutory State Law Claims*

Rickey and Bridges argue that the claims arising under Mo. Rev. Stat. § 542.266 must be dismissed because neither of them were alleged to have any involvement with the procurement of the search warrant. Rickey argues that plaintiffs' claims under § 578.018 against him must be dismissed because there are no allegations that he had any involvement with the search warrant or the disposition hearing. Bridges argues that plaintiffs' claims under § 578.018 against him must be dismissed because plaintiffs' single allegation that he lied at the disposition hearing is insufficient to state a claim under § 578.018.

Mo. Rev. Stat. § 542.266 defines who may issue a search warrant. Because there are no allegations that Rickey or Bridges had any involvement in the issuance or procurement of the search warrant, the complaint fails to state a claim for violation of this section. As a result, the motion to dismiss will be granted as to plaintiffs' claims under this section.

As is stated above, § 578.018 discusses plaintiffs' procedural rights relating to the seizure of their animals. Subsection (1) discusses plaintiffs' right to a disposition hearing. Because there are no allegations against Rickey that relate to the provisions of § 578.018, plaintiffs' claims against him under this section fail to state a claim upon which relief can be granted. However, plaintiffs' allegation that Bridges lied during the disposition hearing may state a claim for relief under this section. As a result, the Court will deny Bridges' motion to dismiss these same claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Eber, Riodan-Lolli, and Wainright's motion to dismiss, or in the alternative for a more definite statement [Doc. #37] is **granted** in part and **denied** in part in accordance with the terms of this Memorandum and Order.

**IT IS FURTHER ORDERED** that defendant Subke's motion to dismiss [Doc. #59] is **granted** in part and **denied** in part in accordance with the terms of this Memorandum and Order.

**IT IS FURTHER ORDERED** that defendant Rickey's motion to dismiss [Doc. 24] is **granted**.

**IT IS FURTHER ORDERED** that defendant Bridges' motion to dismiss [Doc. #35] is **granted** in part and **denied** in part in accordance with the terms of this Memorandum and Order.

An Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 12th day of November, 2008.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE